IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY ANTONIO COX

CRIMINAL CASE NO.
3:10-CR-00008-JTC-CCH

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. Cr. R. 58.1(A)(3)(a) and (b). Let the same be filed and a copy, with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and

any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

Pursuant to Title 18, U.S.C. § 3161(h)(1)(F), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.** The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this 29th day of July, 2010.

/s/ Russell G. Vineyard
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NO. |
| v. | 3:10-CR-00008-JTC-CCH |
| ANTHONY ANTONIO COX | |

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT'S COMPETENCY TO STAND TRIAL**

On March 1, 2010, defendant Anthony Antonio Cox ("defendant") was committed to the custody of a federal psychiatric prison for a psychiatric examination and evaluation. [Doc. 14]. Following evaluation and treatment of defendant at the Federal Detention Center in Miami, Florida ("FDC-Miami"), the Court, as well as counsel, received a copy of a forensic evaluation concerning defendant's competency to stand trial. On June 23, 2010, the Court conducted an evidentiary hearing and heard argument from counsel concerning defendant's competency to stand trial. [Doc. 17]. After careful consideration of the record, arguments of counsel, and relevant legal authority, the undersigned Magistrate Judge **RECOMMENDS** that defendant be found mentally competent to stand trial on the condition that defendant continue to take his medication without interruption.

## I. BACKGROUND FACTS

Defendant is charged in a two-count indictment with bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and with using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). [Doc. 19]. Defendant was admitted to the FDC-Miami for a psychiatric examination and evaluation pursuant to the Court's March 1, 2010, Order. [Doc. 14]. On June 2, 2010, the Warden of the FDC-Miami sent to the Court and counsel a forensic evaluation of defendant completed by Lisa B. Feldman, Psy.D. ("Dr. Feldman"), who reported that defendant does not suffer from a severe mental disorder or defect that would preclude his ability to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

On June 23, 2010, the Court conducted an evidentiary hearing on the issue of whether defendant has the capacity to understand the nature and consequences of the proceedings against him and to assist properly in his defense. [Doc. 17]. Defendant and his attorney, as well as counsel for the government, appeared at the competency hearing, and the Court received into evidence without objection Dr. Feldman's forensic evaluation as Government Exhibit 1, under seal. [Id.; see also Doc. 16]. The forensic report summarized defendant's history and course of evaluation and treatment at the FDC-Miami.

According to the report, defendant was partially cooperative with clinical interviews and psychological testing, and he was diagnosed as suffering from Antisocial Personality Disorder. (Gov. Ex. 1 at 14, 18). In particular, defendant underwent approximately six hours of psychological testing and interviews by various psychological staff under the supervision of Dr. Feldman. (Id. at 3). During his clinical interviews, defendant proved to be a poor historian, but he reported an extensive history of mental health treatment. (Id. at 3-7).

With regard to defendant's recent mental health history, the report explains that on April 12, 2010, while defendant was in federal custody in Atlanta, Georgia, waiting to be transferred to the FDC-Miami, he was found with a razor in his mouth and "claimed that the officers were spraying 'either' through his vents, trying to kill him," and that "the government is trying to kill [him]." (Id. at 8 (internal marks omitted) (alteration in original)). However, it was noted that while defendant was discussing his legal case, "his thoughts appeared more logical and organized." (Id.). Defendant was placed on suicide watch later that same day when correctional staff observed a plastic bag attached around his neck with part of a bed sheet secured around the top of his head and toothpaste under his eye, which he claimed was "war paint." (Id.). At this time, defendant was also diagnosed with "Schizophrenic disorder, paranoid type" and was prescribed several medications. (Id.). On April

3

14, 2010, defendant was released from suicide watch as he had "a drastic improvement in his mood," and was transferred to the Federal Correctional Institution in Tallahassee, Florida on April 15, 2010, and then to the FDC-Miami on April 19, 2010.  (Id. at 8-9).

Dr. Feldman reports that defendant's functioning while at the FDC-Miami was "variable," explaining that at times, his presentation was "dramatic and forcefully staged." (Id. at 13). Dr. Feldman also explained that while defendant was at the FDC-Miami, he engaged in an altercation with his cellmate and alleged that his cellmate had cut him with a "shank." (Id.). Thereafter, defendant was placed in the Special Housing Unit pending an investigation into the incident. (Id.). While in this unit, defendant became disruptive, cut himself with a pencil, defecated and smeared feces in his cell and on his face, and engaged in other self-mutilating behaviors. (Id.). He was subsequently placed on suicide watch, and he continued to make manipulative and dramatic statements and to engage in acts of self-harm. (Id. at 14). During his evaluation at the FDC-Miami, defendant was also transferred to Larkin Community Hospital for medical treatment where he was noted to be cooperative and compliant with medical treatment. (Id.). Upon his return to the FDC-Miami from the hospital, defendant was placed in general population without any further incidents for the remainder of his evaluation period. (Id.).

The remainder of the report describes defendant's mental status after his return from the hospital and explains that defendant's "presentation was consistent with manipulation, not psychosis" and that it is "suggestive of malingering or feigning or if not, embellishment." (Id. at 18-19 (internal marks omitted); see also Gov. Ex. 1 at 3, 13-14, 16-17, 20-21). In fact, it was noted that "[t]hroughout the evaluation period, the defendant attempted to impress as mentally impaired," and "verbalized statements that were characterized as highly implausible." (Gov. Ex. 1 at 14). Dr. Feldman further reported that monitored telephone conversations and e-mails showed that defendant was "fully oriented to his current circumstances and relevant autobiographical information," "exhibited organized, rational, sequential, and coherent thought processes," and "conversed in a spontaneous and appropriate manner." (Id. at 14-15). Additionally, a physical examination of defendant was essentially unremarkable and his intellectual functioning was estimated to fall in the Borderline range. (Id. at 15-16). Moreover, defendant was administered the M-FAST test, which determines the probability that an individual is fabricating or exaggerating psychiatric symptoms, and defendant's score was elevated, indicating a possibility that he was malingering mental illness. (Id. at 17). Based on this result, a more comprehensive test was administered and defendant exhibited a consistent pattern of responding with an "exaggerated endorsement of psychiatric symptoms

and combinations that are infrequently found in genuine psychiatric populations." (Id.). In sum, "[t]he psychological testing produced results that reflected [defendant] grossly exaggerated psychiatric impairment." (Id. at 18).

Although defendant's prognosis is mixed, it is Dr. Feldman's opinion that defendant is able to understand the nature and consequences of the proceedings against him and to properly assist in his defense. (Id. at 20-21). According to the forensic report, defendant has the ability to comprehend the factual aspects of his legal situation, to reasonably process relevant information, and to work with counsel. (Id.). The report states:

> A careful review of the defendant's general court knowledge revealed a sufficient factual and rational understanding of the legal process. However, the defendant made several dramatic statements in a seeming attempt to appear mentally impaired. The defendant was partially able to identify the charges against him, indicating that he is charged with "robbery." He verbalized an understanding of the roles of courtroom personnel. . . . The defendant claimed that he could not assist his attorney in his own defense. . . . However, this response was significantly in contrast with monitored e-mails.
> . . .
> On the GCCT-MSH, an objective measure of psycho-legal knowledge and abilities related to competency to stand trial, the defendant achieved a score indicating a satisfactory level of legal knowledge. Moreover, the defendant attempted to relate bizarre content to his level of trial competency. Mr. Cox endorsed items that are rarely endorsed by genuine incompetent to stand trial defendants. His score on this portion of the test is consistent with that of individuals feigning incompetency to stand trial.

(Id.). Accordingly, based on her evaluation of defendant, Dr. Feldman opined that defendant is competent to proceed to trial. (Id. at 21). However, Dr. Feldman recommended that defendant "may benefit from individual psychotherapy to facilitate better coping mechanisms," and that he should be "maintained on his current medication regimen to ensure to his current level of behavioral stability." (Id. at 19).

## II. DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent." United States v. Rahim, 431 F.3d 753, 759 (11th Cir. 2005) (*per curiam*) (citations omitted). The test for determining competency to stand trial is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (*per curiam*) (internal marks omitted). "Whether the defendant is competent is an ongoing inquiry; the defendant must be competent at all stages of trial." Rahim, 431 F.3d at 759. Although not settled, the Court will assume for purposes of resolving the issue of defendant's competency to stand trial in this case, that it is the government's burden

to prove defendant is competent by a preponderance of the evidence. United States v. Izquierdo, 448 F.3d 1269, 1276-78 (11th Cir. 2006) (*per curiam*).

"[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1259 (11th Cir. 2002) (internal marks and citation omitted); see also Battle v. United States, 419 F.3d 1292, 1299 (11th Cir. 2005) (*per curiam*) (same). Neither proof of "low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior" is necessarily "equated with mental incompetence to stand trial." Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995) (citation omitted); see also Battle, 419 F.3d at 1299 (same). Nor does the fact that a defendant "has been treated with anti-psychotic drugs" render him *per se* incompetent to stand trial. Medina, 59 F.3d at 1107 (citation omitted). Quite often the best evidence of a defendant's competence to stand trial is the evidence of his or her behavior during the relevant time period, "especially the evidence of how he related to and communicated with others. . ." Wright, 278 F.3d at 1259.

The undisputed evidence in this case, as presented at the evidentiary hearing, demonstrates that defendant has sufficient present ability to assist his lawyer with a reasonable degree of rational understanding and that he has a rational and factual

understanding of the proceedings. Rahim, 431 F.3d at 759. The evidence indicates that defendant, following medication with drugs, is able to communicate with staff and doctors, to discuss with reasonable intelligence the criminal proceedings and charges pending against him, and to consult with and assist his lawyer. An understanding of complex issues or legal theories is not required. See United States v. Hogan, 986 F.2d 1364, 1373 (11th Cir. 1993) (finding that minor defects in the defendant's cognitive abilities did not render him incompetent, the court noted that "[e]ven perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency."). In short, the undisputed evidence in this case demonstrates that defendant is presently able to understand the nature and consequences of the proceedings against him and to properly assist in his defense. Therefore, the undersigned finds that defendant is presently competent to stand trial, provided that he continues to take his medications.

### III. CONCLUSION

For the foregoing reasons and cited authority, it is **RECOMMENDED** that the District Court find that defendant is competent to stand trial as he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding

. . . [and that he has] a rational as well as factual understanding of the proceedings against him." Rahim, 431 F.3d at 759 (internal marks and citation omitted).

**IT IS SO RECOMMENDED**, this 29th day of July, 2010.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE