**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| ANTHONY ANTONIO COX, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 3:10-CR-0008-MEF-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 3:13-CV-0148-MEF-RGV |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter is currently before the Court on movant Anthony Antonio Cox's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 173], the government's response, [Doc. 181], and Cox's traverse, [Docs. 187-88]. Cox has also filed a motion to correct typographical errors in his traverse, [Doc. 189], which the Court **GRANTS**. For the reasons stated herein, it is **RECOMMENDED** that Cox's § 2255 motion be denied.

## I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a two-count indictment charging Cox in Count One with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and in Count Two with using and brandishing a firearm in furtherance of the armed bank robbery, in violation of 18 U.S.C. § 924(c). [Doc. 19].

Cox pleaded not guilty, [Doc. 24], and proceeded to a four-day jury trial represented by Vionnette R. Johnson of the Federal Public Defender Program, Inc., [Docs. 34, 79-82, 116-19]. The jury found Cox guilty of Count One and acquitted him of Count Two. [Doc. 85-1].

The evidence presented at trial showed that the RBC Bank in LaGrange, Georgia was robbed on October 27, 2008. [Doc. 116 at 37]. The victim bank teller, Charisse Lynetra Jones, testified that the robber entered the bank, removed his sunglasses, asked about opening an account, and then lifted his shirt displaying what appeared to be a black firearm with a brown handle. [Id. at 37-39]. The robber stated that he needed money. [Id. at 39]. After Jones gave him everything she could, he grabbed the money and left the bank. [Id.]. Jones described the robber's appearance to the jury. [Id. at 40, 58]. Another RBC Bank employee, Brandy Smith, testified that she saw the bank robber drop his sunglasses on the floor as he was leaving. [Id. at 59-61]. DNA recovered from the sunglasses positively matched a DNA sample taken from Cox. [Doc. 117 at 51-53]. Corporal John Slonaker of the LaGrange Police Department testified that he obtained a copy of Cox's photograph and positively matched it to still images of the robber taken from the bank's surveillance video. [Id. at 5, 21, 23].

2

Federal Bureau of Investigation ("FBI") Special Agent Cynthia J. Meyers testified that, during her investigation of the bank robbery, she learned that Michael Baskerville had written a letter confessing to the bank robbery. [Doc. 118 at 9, 20]. Agent Meyers then interviewed Baskerville, who admitted that he had written the letter, confessed to committing the bank robbery, and identified himself in bank surveillance photographs. [Id. at 27-28; Doc. 117 at 123]. Baskerville recanted his confession one week later. [Doc. 117 at 73, 124; Doc. 118 at 29-30].

Baskerville testified that he first met Cox while they were incarcerated in the Cobb County Jail in October 2009. [Doc. 117 at 73, 78]. According to Baskerville, Cox offered to pay him $20,000 if he falsely confessed to the bank robbery. [Id. at 76-77]. Baskerville testified that he did not rob a bank in LaGrange, Georgia on October 27, 2008. [Id. at 77]. Baskerville explained that he initially falsely confessed because: (1) he had AIDS and believed he would not live very long; (2) he believed he would get a lengthy sentence for other bank robberies that he had committed; and (3) he wanted to provide for his daughter during his incarceration. [Id. at 83-85, 100-01]. Baskerville testified that Cox's friend, Cynthia Fuqua, put money in Baskerville's inmate account at Cox's request. [Id. at 92, 94-95].

3

Fuqua testified that she met Cox in June of 2009 while working at a hospital where Cox was a patient.  [Id. at 172].  Fuqua stated that she exchanged letters with Cox and Baskerville and put money in Baskerville's account at Cox's request.  [Id. at 193-99].  Fuqua provided letters written by Cox, including government exhibit 39.  [Id. at 193-97].

Cox testified that he met Baskerville a week before the robbery and that, a week later, Baskerville called him and asked for a ride.  [Doc. 118 at 80-83].  According to Cox, Baskerville told Cox to drive to a bank so that he could open a bank account.  [Id. at 83-84].  Cox testified that Baskerville borrowed Cox's jacket and entered the bank and that Baskerville gave him $20 for gas money when he returned to the car.  [Id. at 84].  Cox stated that he did not see Baskerville again until he was in the Cobb County Jail.  [Id. at 85, 96-97].  Cox referred to Fuqua as his girlfriend and admitted that he asked her and others to put money in Baskerville's account.  [Id. at 76, 101-02, 105, 131].  Cox denied committing the bank robbery.  [Id. at 105-06].

After his conviction, Cox filed several pro se motions, [Docs. 91, 93-94, 101], which the Court denied, [Docs. 96, 107].  Johnson filed a motion for a new trial on Cox's behalf, arguing that Cox was incompetent during his trial because newly discovered evidence revealed that he had not received his prescribed psychiatric

4

medications during trial.  [Doc. 114].  However, counsel subsequently withdrew the motion.  [Docs. 135, 141].  The Court sentenced Cox to 180 months of imprisonment.  [Doc. 143].  Represented by new court-appointed counsel, Mary Erickson, Cox filed a timely notice of appeal.  [Doc. 145].

On appeal, Cox argued only that the Court erred by applying a five-level sentencing enhancement for possessing or brandishing a firearm, pursuant to U.S.S.G. § 2B3.1(b)(2)(C), without finding by a preponderance of the evidence that Cox possessed an actual firearm.  Br. of Appellant, United States v. Cox, No. 11-13394-E (11th Cir. Oct. 31, 2011).  The government agreed and filed a joint motion for a limited remand for resentencing.  [Doc. 151-1].  The United States Court of Appeals for the Eleventh Circuit granted the joint motion, dismissed the appeal, and remanded the case for resentencing.  [Doc. 151].

On remand, Cox filed three pro se motions, [Docs. 155-57], all of which the Court denied, [Doc. 158].  The Court resentenced Cox to 180 months of imprisonment.  [Doc. 159].  Still represented by Ms. Erickson, Cox filed a timely notice of appeal.  [Doc. 160].

In the initial appellate brief filed by counsel, Cox argued only that the Court abused its discretion by imposing an unreasonable sentence above the guidelines.  Br.

5

of Appellant, <u>United States v. Cox</u>, No. 12-13369-A (11th Cir. Aug. 14, 2012).  Cox

filed a <u>pro</u> <u>se</u> motion, which the Eleventh Circuit "construed as motions to discharge

counsel, appoint substitute counsel, and strike the initial brief, and as an alternate

motion to dismiss [the] appeal with prejudice." [Doc. 169 at 2].  On October 15, 2012,

the Eleventh Circuit denied Cox's motions to discharge counsel, appoint substitute

counsel, and strike the initial brief, but granted his alternate motion to dismiss the

appeal with prejudice.  [<u>Id.</u>].

On August 23, 2013, Cox timely filed this <u>pro</u> <u>se</u> § 2255 motion, raising the

following grounds for relief:  (1) prosecutorial misconduct for (a) improperly arguing

during closing argument that Paige Williams, Fuqua, and RanDasha Guy were

involved in a conspiracy to pay Baskerville to falsely confess to the bank robbery that

Cox was charged with when no such evidence was before the jury, (b) allowing Agent

Meyers to testify that Cox was the suspect in bank surveillance photographs,

(c) knowingly using or failing to correct Baskerville's false testimony, (d) failing to

disclose impeaching and exculpatory calls and emails between Cox, Baskerville, and

Fuqua, (e) allowing Agent Meyers to testify improperly that Baskerville had not shown

a weapon in any of his prior robberies, and (f) making improper comments during

6

closing argument about Baskerville's forgery conviction;[1] (2) his attorneys provided him ineffective assistance (a) with respect to his prosecutorial misconduct and incompetency claims and the issue presented in ground four, (b) when trial counsel failed to investigate or withheld several recorded phone conversations between Cox, Fugua, and Guy, and (c) when trial counsel failed to request a handwriting analysis of government exhibit 39 or confront or cross examine Fuqua for forging that exhibit; (3) the Court erred in denying his post-judgment pro se motion that he was incompetent during trial; and (4) the Court erred in allowing his handwritten letters into evidence.  [Doc. 173 at 4-5, 7-8, Attach. A[173-1]-D[173-4]].  The government responds that grounds one and four are procedurally defaulted, that Cox's ineffective assistance of counsel claims lack merit, and that Cox has failed to show that he was incompetent during trial.  [Doc. 181 at 13-32].  In his traverse, Cox withdraws the issues presented in ground four, as well as subsections (e) and (f) of ground one,[2] [Doc. 187 at 79], and reasserts the merits of his remaining grounds for relief, [Id. at 1-78; Doc. 188].

---

[1] Cox refers to subsections (a) through (f) of ground one as issues one through six.  [Doc. 173-1].

[2] Cox refers to these subsections as issues five and six.  [Doc. 187 at 79].

7

## II.  DISCUSSION

**A.**    **General Standards**

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).  An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case.  See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

AO 72A
(Rev.8/82)

**B.**   **Procedural Default**

Cox could have, but did not, raise ground one (prosecutorial misconduct) on direct appeal. A criminal defendant who fails to raise an issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent (1) a showing of cause for the default and actual prejudice or (2) a showing of actual innocence. McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011), cert. denied, 133 S. Ct. 112 (2012). "[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . ." or that the matter was not raised because of ineffective assistance of counsel. Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam). A movant may also establish cause for the procedural default if he can show "that his attorney's performance failed to meet the Strickland standard for effective assistance of counsel." Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997) (internal quotation marks and citation omitted); see also United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (holding that only a meritorious ineffective assistance of counsel claim may constitute cause). If a movant shows cause, he must also show prejudice, i.e., that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

9

constitutional dimensions." <u>Reece</u>, 119 F.3d at 1467 (citation omitted).  To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." <u>McKay</u>, 657 F.3d at 1196.

Cox does not allege that an objective factor external to the defense caused the default.   Additionally, Cox fails to show cause based on counsel's alleged ineffectiveness because, as discussed in section II. C., Cox's ineffective-assistance claims are not meritorious.  <u>See</u> <u>Nyhuis</u>, 211 F.3d at 1344.  Finally, Cox presents no new evidence to meet the actual innocence exception.   Thus, ground one is procedurally barred.

**C.**   **<u>Ineffectiveness Assistance of Counsel Claims</u>**

Cox argues that trial counsel was ineffective for failing to:  (a) object to the prosecutor's closing arguments that Williams, Fuqua, and Guy were involved in a conspiracy to pay Baskerville to make a false confession; (b) object and request a mistrial based on Agent Meyers' improper opinion testimony; (c) request that Baskerville's allegedly false testimony be stricken; (d) obtain impeaching and exculpatory calls and emails between Cox, Baskerville, and Fuqua; (e) investigate several recorded phone conversations between Cox, Fuqua, and Guy; (f) request a

10

handwriting analysis of government exhibit 39 or confront or cross examine Fuqua for forging that exhibit; and (g) alert the trial court to Cox's irrational and inappropriate behavior and inquire whether Cox was receiving his prescribed psychiatric medications during trial. [Doc. 173-1 at 3, 6, 9, 13, 17; Doc. 173-2; Doc. 173-3 at 2]. Cox also argues that appellate counsel was ineffective for failing to raise the prosecutorial misconduct claims identified in subsections (a) through (d) above and his incompetency claim on direct appeal. [Doc. 173-1 at 6, 9, 13, 17; Doc. 173-3 at 2].

As to trial counsel's effectiveness, the government responds that:  (a) the prosecutor's closing argument was not improper; (b) trial counsel's decision not to object or request a mistrial based on Agent Meyers' opinion testimony was sound trial strategy; (c) Baskerville did not commit perjury and trial counsel cross-examined him on the inconsistent testimony; (d) the alleged calls and emails were not withheld from trial counsel and were not exculpatory or impeaching; (e) trial counsel's alleged failure to investigate the phone calls and request a handwriting analysis of government exhibit 39 were matters of trial strategy, and Cox has not shown that counsel's strategy was unreasonable; and (f) Cox has not shown deficient performance or prejudice as to his incompetency claim. [Doc. 181 at 19-25]. Regarding Cox's ineffective assistance of appellate counsel claims, the government responds that because Cox's underlying

11

prosecutorial misconduct and incompetency claims lack merit, appellate counsel's failure to raise them does not amount to ineffective assistance.  [Id. at 25-26].  Cox's traverse merely reiterates the arguments presented in his initial petition.  [Doc. 187].

## 1.   **Legal Standard**

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Eagle v. Linahan, 279 F.3d 926, 938 (11th Cir. 2001) (applying Strickland to allegations of ineffective assistance of appellate counsel).  The analysis is two-pronged.  However, a court need not address both prongs "if the defendant makes an insufficient showing on one.Strickland, 466 U.S. at 697.  A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.   A court analyzing Strickland's first prong must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689; Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . .") (citation omitted).  Counsel is not incompetent so long as the particular approach taken could be considered sound

12

strategy. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("[A] petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden."). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).

Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also Eagle, 279 F.3d at 943 ("To determine whether the [unreasonable] failure to raise a claim on appeal resulted in prejudice, we review the merits of the omitted claim.").

13

2.    **Analysis**

Cox maintains that trial counsel should have objected when the prosecutor made the following statement during closing argument:

> Cynthia Fuqua, a puppet.  Strings being pulled.  Manipulated for [Cox's] benefit.  Remember he has got many girls coming to see him.  Think about it, he is in jail.  He has three: Paige Williams, Ms. Guy, Ms. Fuqua coming to see him, putting money on his books, visiting him, going to see Mr. Baskerville.  He is scheming, plotting, planning.  She was not willing.

[Doc. 119 at 53].  Cox contends that counsel should have objected that there was no evidence to support this statement, which he asserts implies that a conspiracy existed between him, Williams, Fuqua, and Guy to pay Baskerville to falsely confess.  [Doc. 173 at 4; Doc. 173-1 at 1-6].  Cox also faults appellate counsel for not raising this claim on direct appeal.  [Id. at 6].

Contrary to Cox's assertion, the government did not state that Fuqua, Williams, and Guy were knowing and willing participants in any conspiracy or that these women committed any crime.  Rather, this statement during the government's closing implies only that Cox orchestrated the plan to get his female friends to pay Baskerville so that he would falsely confess to the robbery, and it is supported by evidence introduced at trial, see [Doc. 117 at 76-77, 193-99].  In fact, during his trial testimony, Cox referred

14

to Fuqua as his girlfriend and admitted that he knew Williams and Guy and that he had asked each of these women to put money in Baskerville's account. [Doc. 118 at 101-02, 105, 131]. Accordingly, trial counsel reasonably chose not to object to the prosecutor's statement, Cox cannot show prejudice based on the failure to object because the statement was supported by trial evidence, and appellate counsel was not ineffective for failing to raise this meritless claim. See Strickland, 466 U.S. at 690, 694; Eagle, 279 F.3d at 943.

Next, Cox asserts that trial counsel should have objected and requested a mistrial when Agent Meyers testified that, during her investigation, she compared a photograph of Cox to the bank surveillance camera photographs and concluded that Cox was the robber. [Doc. 173-1 at 7-9; Doc. 118 at 13]. Cox notes that when the prosecutor later asked Agent Meyers whether, based on her comparison of a photograph of Baskerville to the photographs of the bank robber, Baskerville resembled the robber, trial counsel objected, and the Court ruled that such a question would invade the province of the jury. [Doc. 118 at 22-25].

Agent Meyers' testimony that she concluded that Cox was the individual depicted in the bank surveillance photographs was in response to questions regarding the course of her investigation, [Doc. 118 at 13], and such testimony would be

15

admissible if offered simply to explain the underlying circumstances of Cox's arrest. See United States v. Martin, 262 F. App'x 392, 397 (3d Cir. 2008) ("Police officers often make arrests based on photographs, videotapes or even drawings of suspects[; and thus, where an officer's identification] testimony was an iteration of the circumstances of the arrest, it is not impermissible opinion evidence."). However, even if Agent Meyers' testimony was admitted in error, it was harmless and resulted in no prejudice to Cox.

Lay witness opinion testimony is limited to that which is "(a) rationally based on the witness's perception" and "(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701. "Lay opinion testimony identifying a defendant in surveillance photographs is admissible under Rule 701 . . . where . . . 'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" United States v. Pierce, 136 F.3d 770, 774 (11th Cir. 1998) (citation omitted). Factors to consider in determining whether such testimony would be helpful to the jury include: (1) "the witness's level of familiarity with the defendant's appearance"; (2) "the witness's familiarity with the defendant's appearance at the time the surveillance photographs were taken or dressed in a manner similar to the individual depicted in the

16

photographs"; and (3) whether the defendant had altered his appearance prior to trial.

Id. at 774-75 (citations omitted).

> Identification testimony from law enforcement or corrections personnel may increase the possibility of prejudice to the defendant either by highlighting the defendant's prior contact with the criminal justice system, if the witness's occupation is revealed to the jury, or by effectively constraining defense counsel's ability to undermine the basis for the witness's identification on cross-examination, if the witness's occupation is to remain concealed.

Id. at 776.  However, even where such testimony is admitted in error, it does not amount to reversible error if it is harmless, i.e., if "the jury would have convicted even absent the error."  United States v. Earls, 704 F.3d 466, 473 (7th Cir. 2012) (concluding that admission of law enforcement officers' identification testimony based solely on the comparison of two photographs already in evidence was harmless error in light of the overwhelming evidence of defendant's guilt) (citation omitted); see also United States v. Middlebrook, 141 F. App'x 834, 838 (11th Cir. 2005) (per curiam) (holding that erroneous admission of police officer's lay opinion testimony that defendant participated in bank robbery was harmless "because the great weight of evidence . . . implicated [him] in the planning and commission of the robbery").

There was substantial evidence presented at trial showing that Cox robbed the RBC Bank in LaGrange, Georgia on October 27, 2008, including that:  (1) the victim

bank teller saw the robber remove his sunglasses when he entered the bank; (2) another teller saw the robber drop his sunglasses as he was leaving; and (3) DNA recovered from the sunglasses positively matched a DNA sample taken from Cox.  [Doc. 116 at 38, 61; Doc. 117 at 51-53].  Moreover, Baskerville testified that Cox offered to pay him $20,000 if he falsely confessed to the bank robbery, and Fuqua testified that she put money in Baskerville's account at Cox's request.  [Doc. 117 at 76-77, 198-99].  The jury had the opportunity to observe both Cox and Baskerville and compare them to the bank surveillance photographs, as well as the bank teller's description of the robber.  In fact, the prosecutor did not mention Agent Meyers' identification testimony during closing argument, but directed the jurors to look at Cox's face and compare it to the surveillance photographs.  [Doc. 119 at 48].  There is no evidence before this Court indicating that the jury abdicated its fact-finding responsibility and deferred to Agent Meyers' testimony regarding the bank robber's identity.  Thus, the Court concludes that the jury would have convicted Cox without Agent Meyers' identification testimony and that the error, if any, was harmless.  See Earls, 704 F.3d at 473; Middlebrook, 141 F. App'x at 838.

Accordingly, Cox has not shown prejudice based on trial counsel's failure to object to the harmless error.  See Strickland, 466 U.S. at 694.  Similarly, Cox cannot

18

support a prosecutorial misconduct claim for allowing Agent Meyers' testimony. See United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009) (To support a prosecutorial misconduct claim, a defendant must show, among other things, "that, but for the [prosecutor's actions], the outcome of the trial would have been different.") (citation omitted). Thus, appellate counsel was not ineffective for failing to raise this meritless claim. See Eagle, 279 F.3d at 943.

Cox also contends that Baskerville falsely testified that Cox told him that his first letter of confession was insufficient and then helped him write his second letter, as evidenced by the fact that Cox was no longer incarcerated at the Cobb County Jail when Baskerville mailed the first letter. [Doc. 173-1 at 10-13]. Cox argues that trial counsel was ineffective for failing to request that this false testimony be stricken and that appellate counsel was ineffective for not raising this claim on direct appeal. [Id. at 13].

Baskerville testified that before he wrote the second letter, he sat down with Cox, who told him the details of the bank robbery, which Baskerville then memorized. [Doc. 117 at 88-89]. On cross-examination, Baskerville acknowledged that Cox had left the Cobb County Jail on October 24, 2009, and, thus, was not there when

19

Baskerville wrote his second letter of confession.  [Id. at 143-44, 147].  Baskerville

claimed that he had "memorized the story" and "wrote it later."  [Id. at 47].

Cox has not demonstrated that Baskerville's testimony was false.  Additionally,

trial counsel thoroughly cross-examined Baskerville on this point.  [Doc. 117 at 143-

47].  Accordingly, Cox has not shown that trial counsel was ineffective for not

requesting that Baskerville's testimony be stricken or that appellate counsel was

ineffective for not raising this meritless claim.  See Strickland, 466 U.S. at 690; Eagle,

279 F.3d at 943.

Cox next contends that trial counsel was ineffective for failing to obtain

telephone calls and emails between Cox, Baskerville, and Fuqua that would have

impeached (1) Baskerville's testimony that he met Cox while at the Cobb County Jail,

and (2) Fuqua's testimony that Cox wrote her a letter admitting the details and events

of the bank robbery.  [Doc. 173-1 at 14-17].  Cox asserts that appellate counsel was

ineffective for failing to raise this claim on direct appeal.  [Id. at 17].

However, Cox has not produced these alleged telephone calls and emails or

shown that the government withheld them.  Moreover, speculation that missing

evidence "would have been helpful . . . is 'insufficient to carry the burden of a habeas

corpus petitioner.'"  Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001)

20

(citation omitted).  Therefore, Cox has not met his burden to show that either of his attorneys provided him ineffective assistance on this ground.

Cox also contends that trial counsel either failed to investigate or withheld several recorded phone conversations between Cox, Fuqua, and Guy.  [Doc. 173 at 5; Doc. 173-2 at 1-16].  Specifically, Cox maintains that his protestations of his innocence during these phone calls would have refuted the government's argument that he had the three females pay Baskerville to falsely confess and would have impeached Fuqua's testimony regarding the letter that Cox allegedly wrote disclosing the details of the robbery.  [Doc. 173-2 at 1-16].[3]

During his trial testimony, Cox denied that he had committed the robbery and that he had paid Baskerville to confess falsely.  [Doc. 118 at 101, 105-06].  Thus, these telephone calls would have been cumulative of Cox's own testimony.  "Counsel is not required to present cumulative evidence."  Rhode v. Hall, 582 F.3d 1273, 1287 (11 th

---

[3] Cox also makes much of Fuqua's statement to him during one of these phone calls that Agent Meyers told her that she had "better be at court" and had "better not make [Agent Meyers] come find her."  [Doc. 173-2 at 3].  However, Cox has not shown that these alleged statements were made to coerce Fuqua to testify falsely. Moreover, Fuqua admitted during her testimony that she did not want to be there, was testifying pursuant to a subpoena, and was asked to testify truthfully about the case. [Doc. 117 at 171].  Accordingly, Cox has not shown that counsel was ineffective for failing to present this statement.

AO 72A
(Rev.8/82)

Cir. 2009) (per curiam) (citing <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1327 n.7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.") (per curiam)).  Additionally, these phone conversations would not have significantly aided Cox's defense, as the government never claimed that the women either believed that Cox was guilty or knowingly participated in a conspiracy to pay Baskerville to confess falsely.  Accordingly, Cox also fails to demonstrate deficient performance by counsel on this ground.

Next, Cox maintains that trial counsel should either have requested a handwriting analysis of government exhibit 39, the letter that he purportedly wrote to Fuqua concerning the details of the bank robbery, or cross-examined Fuqua as to her alleged forgery of that exhibit.  [Doc. 173-2 at 17-21].  However, Cox has not presented a handwriting analysis of government exhibit 39, and his contention that it would show that he did not write the letter is merely speculative, as is what counsel might have elicited from Fuqua on cross-examination.  As previously noted, speculation is insufficient to entitle Cox to habeas relief.  <u>Johnson</u>, 256 F.3d at 1187. Moreover, the Court properly admitted the exhibit based on Fuqua's testimony that she was familiar with Cox's handwriting, [Doc. 117 at 177, 196-97].  <u>See</u> <u>United States v.</u>

22

Barker, 735 F.2d 1280, 1283 (11th Cir. 1984) (citing Fed. R. Civ. P. 901(b)(2) to find that the district court did not err in allowing lay opinion testimony on handwriting identification of two co-workers who were familiar with the defendant's handwriting). Thus, Cox has not shown deficient performance by counsel on this ground.

Finally, Cox maintains that trial counsel failed to alert the Court to Cox's irrational and inappropriate behavior or inquire whether Cox was receiving his prescribed psychiatric medications during trial and that appellate counsel was ineffective for not raising this issue on direct appeal. [Doc. 173-3 at 2]. As discussed below in section II.D., Cox has not shown that he was incompetent during trial. Thus, Cox fails to show prejudice based on his attorneys' representation as to this issue.

**D.**   **Competence to Stand Trial**

Cox maintains that the Court erred in denying his post-judgment pro se motion that he was incompetent during trial because he did not receive his prescribed psychiatric medications during that time. [Doc. 173 at 7; Doc. 173-3]. Cox asserts that, as a result of not receiving those medications, he suffered "delusions and schizophrenia during his trial." [Doc. 173-3 at 1]. As evidence of this, Cox points to trial counsel's statement in the motion for a new trial that "Cox appeared anxious[,]

23

was rocking back and forth in his chair, laughing inappropriately and an investigator had to sit next to him during trial to try to keep him calm." [Id. at 2; Doc. 114 at 3].

In his traverse, Cox also notes that, during his trial testimony, he laughed inappropriately, and the Court occasionally had to direct him to answer the question. [Doc. 187 at 62]. Cox also points to the investigator's affidavit, which states that the investigator had to place her hand on Cox's chair to stop him rocking nervously during trial and had to remind Cox "to remain calm and not show any signs of agitation." [Id. at 64-65, 71]. Additionally, Cox includes an affidavit from a Deputy United States Marshal, stating that Cox had told the Marshal that "he had gotten into trouble . . . because he was not on his medication, or had not been getting his medication." [Id. at 65, 72]. Cox maintains that, due to his incompetency during trial, he could not assist his counsel by, for example, alerting her to the allegedly impeaching and exculpatory calls and emails. [Id. at 66-67]. Cox asserts that his trial counsel should have brought her observations of his behavior to the Court's attention and inquired regarding his medications and that appellate counsel should have raised the issue on direct appeal. [Id. at 69-70; Doc. 173-3 at 2].

A defendant is legally incompetent if he is "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand

24

the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).  "The standard for mental competency to stand trial is 'whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.'"  Moore v. Campbell, 344 F.3d 1313, 1321 (11th Cir. 2003) (per curiam) (citing Dusky v. United States, 362 U.S. 402, 402 (1960)).  "[A] petitioner raising a substantive claim of incompetency . . . must demonstrate his or her incompetency by a preponderance of the evidence."  Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995) (citation omitted).  A defendant is entitled to a post-conviction hearing on an incompetency claim only after presenting "clear and convincing evidence" that creates a "real, substantial and legitimate doubt as to his competence to stand trial."  Id. (citation omitted).  "[T]he standard of proof is high [and] the facts must positively, unequivocally, and clearly generate the legitimate doubt."  Id. (citation omitted).

"Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges."  Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1259 (11th Cir. 2002) (citation omitted).  Neither proof of "low intelligence, mental

AO 72A
(Rev.8/82)

deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." <u>Medina</u>, 59 F.3d at 1107 (citation omitted). Nor does the fact that a defendant "has been treated with anti-psychotic drugs" render him *per se* incompetent to stand trial. <u>Id.</u> (citation omitted). "The best evidence of [a defendant's] mental state at the time of trial is the evidence of his behavior around that time, especially the evidence of how he related to and communicated with others then." <u>Wright</u>, 278 F.3d at 1259.

Cox's psychiatric evaluation indicated that he was malingering or grossly exaggerating his psychiatric impairment. <u>See</u> [Doc. 28 at 7-8]. The evaluation concluded that Cox was competent to stand trial, but should be maintained on his current medications to ensure his "behavioral stability." [<u>Id.</u> at 9]. Thus, the Court found that Cox was "competent to stand trial, provided that he continue[d] to take his medications." [<u>Id.</u> at 11; Doc. 30].

Trial counsel's and the investigator's observations that Cox appeared anxious during trial do not establish that he was incompetent to stand trial. The Court agrees with the government's assessment that Cox's laughter was meant to show that questions about his involvement in a scheme to bribe Baskerville was laughable. <u>See</u> [Doc. 118 at 102, 125, 146]. There were a few instances during his cross-examination

26

when Cox gave non-responsive answers and the Court directed him to answer the questions.  [Id. at 110, 119, 120, 124, 151].  However, Cox was able to follow the Court's instructions, gave logical responses, and demonstrated that he understood the questions.  [Id.].

The trial record, including Cox's testimony, simply does not support Cox's claim of incompetence.  When the Court questioned Cox regarding his decision to testify, he gave answers responsive to the Court's questions, stated that there were no issues that would impair his judgment, and affirmed that he had consulted with his attorney about his decision to testify.  [Id. at 70-71].  On direct examination, Cox demonstrated a good memory and gave detailed information on his family, work history, and criminal history.  [Id. at 73-75].  Cox recalled specific details and dates concerning his prior periods of incarceration and interaction with witnesses, logically refuted key pieces of evidence, and recalled inconsistencies in government witness testimony.  [Id. at 75-78, 81-87, 96-99, 100-02, 105].

Cox has failed to meet his burden to present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." See  Medina, 59 F.3d at 1106 (citation omitted).  Thus, Cox cannot show prejudice based on his attorneys' representation on this matter.  See Adams v. Wainwright, 764

27

F.2d 1356, 1360, 1367 (11th Cir. 1985) (Where a defendant has not met his burden to show a "legitimate doubt as to his mental competency at the time of trial[,] . . . the attorney's conduct in investigating and his decision not to pursue a claim of incompetency did not result in prejudice.").

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Cox's ground for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV.  CONCLUSION

For the foregoing reasons,  **IT IS HEREBY RECOMMENDED** that this 28 U.S.C. § 2255 motion to vacate sentence, [Doc. 173], and a COA be **DENIED**.

Cox's motion to correct typographical errors in his traverse, [Doc. 189], is **GRANTED.**

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 21st day of February, 2014.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE